writ of error because the judgment was not a final one. 152 Fed. 414, 81 C. C. A. 556.

The bank thereupon, on October 12, 1907, filed in the United States Circuit Court for the District of Colorado a new petition for scire facias, seeking to revive the judgment. Personal service of the writ was had upon Hughes in Texas. Upon such service judgment was entered, December 16, 1907, reviving the judgment of June 26, 1891 and ordering that the bank have its execution against Hughes for its debt, damages and interest according to the form, force and effect of that judgment.

[1] Article 5691 provides that every action upon a judgment or decree rendered "in any other state or territory of the United States, in the District of Columbia, or in any foreign country," shall be barred if by the laws of such State or country such action would there be barred, and the judgment or decree be incapable of being there otherwise enforced; and whether so barred or not, no action against a person who shall have resided in this State during the ten years next preceding such action shall be brought upon any such judgment or decree rendered more than ten years before the commencement of such action.

It was fully within the power of the State to prescribe the period of limitation for actions in its own forums upon judgments rendered in other jurisdictions, Federal jurisdictions as well as any other. The statute clearly relates to all judgments rendered without the state of Texas, regardless of the character of the court rendering them. The language could not be plainer. There is nothing about the statute to construe, and there is no warrant for engrafting upon it an exception with respect to judgments rendered by the Federal Courts.

[2, 3] The scire facias proceeding in which the judgment of revivor of December 16, 1907, was entered was either but a continuance of the suit which resulted in the judgment of June 26, 1891, or else a new action for debt upon that judgment.

If the latter, the judgment of revivor was of no effect in the courts of this State, since, if it was a new suit, the court was without the power to render the judgment. There was no appearance by Hughes in the proceeding, and the only service had upon him in its connection was without the jurisdiction of the forum, in another State of which he was at the time a resident.

If the former, the date of the rendition of the original judgment—June 26, 1891—fixes the time for the running of limitation, and the action upon the judgment was, under Article 5691, clearly barred.

Under any view of the case, therefore, the judgment of the trial court was correct, and its affirmance by the Court of Civil Appeals should be affirmed.

In the Federal Courts the proceeding by scire facias for the revival of a personal judgment is treated as merely a continuance of the original suit. Where the proceeding is so considered there are holdings that jurisdiction duly obtained in the original suit over the person of the defendant will endure for the revival of the judgment, and the giving of reasonable notice to him will support the judgment of revivor. Comstock v. Holbrook, 82 Mass. (16 Gray) 111, is such a decision. But in such cases, the judgment of revivor does not become the judgment. It merely revives the judgment—restores it to its original force. An action upon the judgment thus revived is necessarily upon the original judgment, and limitation in such an action must be determined according to the judgment's original date.

Where the scire facias proceeding for the revival of a judgment is not so treated, its character is simply that of an independent action for debt—a new suit; and the power to render judgment in the proceeding must depend upon jurisdiction over the person of the defendant as in any other suit.

The judgments of the District Court and Court of Civil Appeals are affirmed.

---

FITZGERALD et al. v. ROBISON, Com'r of General Land Office, et al. (No. 4673.)

(Supreme Court of Texas. April 21, 1920.)

Mandamus ⬤⟲85—Will not issue to compel land commissioner to convey land in disregard of prior patent.

Since the land commissioner has no authority to determine the legality of a patent previously issued, mandamus will not lie to compel him to issue a permit to prospect on land for which the state had previously issued a patent, which it had never attempted to set aside; the remedy for wrongful patent being by action by the Attorney General under Rev. St. 1911, art. 5468.

Application by A. N. Fitzgerald and others against J. T. Robison, Commissioner of General Land Office, and others, for leave to file a petition for mandamus. Denied.

T. H. Stone, of Houston, for relators.

PHILLIPS, C. J. At a former date the motion for leave to file a petition for mandamus in this case, to require the Commissioner of the General Land Office to issue the relators a permit to prospect for oil and gas upon the certain land in Harris county known as Hog Island, was refused.

This motion is one by the relators asking that the court indicate the reason for its re-

fusal to grant the original motion. It is not the practice of the court to file opinions in the refusal of motions for leave to file petitions for mandamus, but because of the nature of this case and the number of mandamus proceedings of the same character that are being filed in the court we deem it proper to re-state the rule of the court as to such cases.

The land here involved was patented to Ashbel Smith in the year 1859 and it is now held under that patent. The patent has never been annulled by any suit at the hands of the State. For more than sixty years the State has recognized its validity so far as indicated by any action on its part. As between the State and other parties, therefore, the land has the status of titled land.

We do not think the Land Commissioner, an executive officer, has the authority or is at liberty to disregard the patent, by his own action in effect declare it void, and grant rights in conflict with it; and he should not be compelled to do so.

It was for this reason that the Commissioner refused to issue the permit, and his action must be approved.

The Commissioner is not a judicial officer. It is not his function to annul grants of land formally made by the State, and because so made, entitled to be respected until set aside by appropriate judicial proceedings. A patent to land can only be attacked by the State or some one invested with a right prior to the patent. Dunn v. Wing, 103 Tex. 393, 128 S. W. 108.

If the particular land has been wrongfully patented, and it is rightfully a part of the public domain, the remedy of the State is an action in the District Court prosecuted by the Attorney General. Article 5468.

This court will not pass upon the validity of such titles in mandamus proceedings brought by private parties against the Land Commissioner. A contrary ruling would but announce that the Land Commissioner, in the first instance, has the authority to adjudicate such titles, and, if in his opinion invalid, annul them.

In Juencke v. Terrell, Commissioner, 98 Tex. 237, 82 S. W. 1025, the court made this announcement upon the subject:

"We are of the opinion that where there is a dispute as between the State and another party as to the title to a tract of land, the Commissioner cannot be compelled to make a sale. It is hardly within the scope of his functions or duties to pass upon titles in such cases; and we should be reluctant to hold that the Legislature intended to impose such duty upon him, in the absence of language in the statute showing clearly that intent. It is known that at the date of the original act which appropriated these lands to the school fund there were many large bodies of land lying in the State held by persons who asserted title thereto, and whose titles had never been adjudicated and were not conceded. It is unreasonable to suppose that the Legislature intended to put such lands upon the market for sale, and thus to turn loose upon the courts a flood of litigation as between the purchasers and the adverse claimants. On the contrary, we think that the purpose of the Legislature with reference to them is shown by the eighth section of the act. That section in part is as follows: 'When any of the lands described in this act, or any of the other public lands of the State held or owned by any fund, or any land in which this State or any such funds have an interest, are held, occupied or claimed by any person or association or corporation, adversely to the State, or to such fund, it shall be the duty of the Attorney-General to institute suit therefor.' "