R. Y. WALKER V. JOHN G. KENEDY, JR., ET AL.

No. 7508. Decided April 5, 1939.
Rehearing overruled May 24, 1939.
(127 S. W., 2d Series, 163.)

*Joe Burkett*, of San Antonio, and *Golden & Croley* and *J. R. Howell, Jr.*, all of Dallas, for plaintiff in error.

One who has complied with all statutory requirements in making application for the purpose of surveying public lands becomes vested with a right to have the survey made so as to enable him to lease the land, and acquires a justiciable interest

in the land sufficient to authorize him to maintain an action to enable him to complete the leasing of the land, and to restrain private citizens from interfering with a survey by a state licensed land surveyor. Camp v. Gulf Production Co., 122 Texas 383, 61 S. W. (2d) 773; Cockerell v. Work, 122 Texas 406, Thomson v. Locke, 66 Texas 383, 1 S. W. 112.

*Boone, Henderson, Boone & Davis,* of Corpus Christi, and *Perkins & Floyd,* of Alice, for defendants in error.

MR. JUDGE SMEDLEY of the Commission of Appeals, delivered the opinion for the Court.

Defendants in error are the owners of a number of large grants of land in Kenedy County titled under Mexican sovereignty prior to the year 1836 and thereafter confirmed by acts of the Legislature of the State of Texas or by judgments rendered in suits to which the State was a party, and also the owners of a grant of about twenty-five leagues of land known as Barreta, titled in 1804 by the government of Spain and confirmed by judgment in a cause entitled State of Texas v. Spohn, 83 S. W. 1135. These several surveys or grants of land lie west of Laguna Madre and south of Baffins Bay, Laguna Salado and Olmos Creek. They have been owned and possessed for many years by defendants in error as a ranch for stock raising, enclosed by fences to their west and south and by the natural barriers above named to their north and east.

Plaintiff in error Walker in March 1937 filed with O'Dell Douglass, a land surveyor licensed under Articles 5268-5281 of the Revised Civil Statutes of 1925, eight separate applications for surveys of areas "believed to be unsurveyed land belonging to the public free school fund," with a view to obtaining mineral leases under Section 8 of Chapter 271, Acts Regular Session of the 42nd Legislature approved May 29, 1931, (Article 5421c, Vernon's Annotated Texas Civil Statutes). The several areas to be surveyed were described in the applications as lying between certain of the grants owned by defendants in error or as lying between one or more of the grants and the waters to their north and east. When Douglass, the surveyor, undertook to enter the ranch of defendants in error in order to make surveys pursuant to the applications, defendants in error refused to permit him to enter their enclosure for that purpose, advising him that if he did so he would be treated as a trespasser and ejected.

Thereupon plaintiff in error filed this suit to enjoin defendants in error from interfering with or hindering the surveyor in making surveys of the various grants and of the areas covered by the applications. Defendants in error by cross action sought injunction against plaintiff in error, his agents and representatives, to restrain them from making or attempting to make the surveys and from interfering with their peaceable use and possession of the lands. After trial without a jury the district court rendered judgment denying to plaintiff in error the injunction for which he prayed and granting permanent injunction to defendants in error against plaintiff in error in accordance with their prayer. There were incorporated in the trial court's judgment elaborate findings that none of the areas described in the applications made by plaintiff in error is unsurveyed, unappropriated land, and that each of such areas is within the bounds of one or more of the grants of land owned by defendants in error.

The Court of Civil Appeals affirmed that part of the trial court's judgment which denied injunction to plaintiff in error but set aside and struck from the judgment that part of the same that awarded injunction to defendants in error. 120 S. W. (2d) 494. Writ of error was granted on the application of plaintiff in error Walker.

The opinion of the Court of Civil Appeals contains the statement, not controverted here by plaintiff in error, that originally there were several alleged vacancies involved in this suit but that the controversy has been narrowed to what is referred to as tract No. 8, alleged to lie between a survey known as "Little Barreta" and another survey known as "Big Barreta." Thereupon the opinion proceeds to discuss the grounds of plaintiff in error's contention that there is a vacancy between the two Barreta surveys and announces the conclusion that there is no such vacancy, basing its conclusion upon the judgment rendered in State v. Spohn (83 S. W. 1135) and the patent issued pursuant to that judgment. The Court of Civil Appeals also overruled the contention of plaintiff in error that he was entitled to have the survey made without being required to prove that the area applied for was in fact unsurveyed, unappropriated land, holding that there is no procedure prescribed by statute for the enforcement of such asserted right and that plaintiff in error had failed to show himself entitled to the relief sought under the general rules of equity.

■ It is our opinion that one who has made a proper application to a county surveyor or to a licensed state land surveyor for the survey of an area believed to be unsurveyed public school land, either under Section 6 of the Act of 1931 for the purpose of purchasing the land or under Section 8 for the purpose of leasing the land for minerals, has the right to have the land surveyed in order that he may proceed to take the other steps prescribed by the act as necessary to accomplish the purchasing or the leasing of the land; that injunction may issue to prevent interference with the surveyor when he is proceeding in a lawful manner and under a proper application to make the survey; and that the applicant should not be required, in a suit to enforce by injunction the right to have the survey made, to prove that the area applied for is in fact unsurveyed public school land.

■ The foregoing conclusions follow from the construction placed upon the Act of 1931 in Cause No. 7503, Short v. W. T. Carter & Brother, 133 Texas 202, 126 S. W. 953, this day decided, and from the application of the principles announced in the opinion in that case to the question here under consideration. As there held, unsurveyed public school land is subject to lease under Section 8 of the Act of 1931 even if the area sought to be leased is adversely possessed and claimed by another to lie within a survey owned by him, and even though the area is not visibly shown or designated as unsurveyed land on the official Land Office map of the county. It is further held in that case that Section 8 of the Act of 1931 confers upon the Commissioner of the General Land Office lawful authority to determine, as a basis for his action in executing or declining to execute a mineral lease to an applicant, the question whether the area applied for and described in the field notes is unsurveyed land as defined in the act, and that the courts cannot, when the question is still properly before the Commissioner, take jurisdiction and proceed to decide the question.

Section 8 of the Act of 1931 contemplates and intends that the leasing of unsurveyed public school land for minerals shall be accomplished in the method prescribed by said section, which includes the determination by the Commissioner, after the survey has been made and the field notes filed in the General Land Office, of the question whether the area applied for and described in the field notes is unsurveyed public school land as defined in Section 3 of the Act. That determination cannot thus be made unless the survey is first completed and

the field notes prepared and filed. Refusal on the part of a claimant of the land to permit the surveyor to make the survey defeats the right given by the Act to the applicant to have the survey made and effectually prevents the Commissioner from leasing the land in the manner that the Act intends. Since the applicant is required by the Act to have the survey made in order to perfect a right to lease, he should not be without remedy to prevent interference with the making of the survey. To require the applicant, in his suit filed for the purpose of preventing interference with the survey, to make proof that the land is unsurveyed public school land would be to permit the court to decide a question that the Act intends shall be determined first by the Commissioner. Short v. W. T. Carter & Brother, supra.

■ A licensed state land surveyor, acting pursuant to a proper application and conducting himself in a lawful manner, is not to be regarded or treated as a trespasser when he enters or undertakes to enter upon the land for the purpose of making the survey. The surveyor Douglass was duly licensed and qualified as a state land surveyor under the provisions of Article 5268-5282, Revised Civil Statutes of 1925. The record shows that before entering upon his duties he took the official oath and made bond as required by Article 5275. Such licensed land surveyor is authorized by Article 5276 to perform the duties that may be performed by county surveyors. In undertaking to make surveys pursuant to the applications made by plaintiff in error the surveyor Douglass was a public official engaged in the performance of his duties.

Notwithstanding the conclusions above expressed, we find that no error is shown, as the case is presented here, in the action of the trial court in denying to plaintiff in error the injunction for which he prayed. As has been said, the Court of Civil Appeals treated the case in that court as involving a controversy with respect to only one vacancy, that claimed by plaintiff in error to lie between the two Barreta surveys. The application for writ of error contains no assignment of error attacking the findings of the trial court that none of the areas described in the applications made by plaintiff in error is unsurveyed, unappropriated land. The only assignment of error in the application under which the contention is made that there is vacant land involved in the suit is the second assignment, which complains of the decision of the Court of Civil Appeals that there is no unsurveyed land between the two Barreta surveys. The application for writ of error and the

brief filed and oral argument made in this Court for plaintiff in error constitute in effect, if not in express terms, admissions by plaintiff in error that there is no vacant land included within the descriptions contained in the applications set out in his petition except a tract lying south of the south line of La Barreta and north of the north line of Barreta, and further that there is no unsurveyed land lying between the east lines of La Parra, San Pedro de las Motas, El Palmito and the La Barreta on the west and the west lines of Rinco del Penascal and Rincon Mirasoles and Laguna Madre on the east. Plaintiff in error has not been injured by refusal to award him injunction to prevent interference with the surveying of land which he admits is not unsurveyed public school land.

In so far as the alleged vacancy between the two Barreta surveys is concerned, it is our opinion that plaintiff in error neither pleaded nor proved the filing of an application for a survey of that area. The alleged vacancy lies between the south line of La Barreta and the north line of Barreta and is described in plaintiff in error's brief as being a rectangular area of land 2563 varas in width north and south and 20,000 varas in length east and west. La Parra fronts on Baffins Bay, a tributary of Laguna Madre. San Pedro de las Motas lies immediately south of La Parra, El Palmito immediately south of San Pedro de las Motas, and La Barreta immediately south of El Palmito, the southeast corner of each survey coinciding with the northeast corner of the survey joining it on the south. The north line of Barreta is shown on the official Land Office may of Kenedy County as coinciding with the south line of La Barreta.

Plaintiff in error makes the contention that the eighth application for a survey set out in his petition describes or includes the east part of the alleged vacancy between the two Barretas. The description contained in that application is as follows:

"Situated in Kenedy County, Texas, about 15 miles SE from the County site. Said tract is bounded as follows:

"Bounded on the West by San Pedro de las Motas Survey for Xavier Salinas, El Palmito Survey made for Miguel Ynojosa, and La Barreta Survey, made for Leonardo Salinas;

"On the South by Barreta Survey, made for Joes Francisco Balli;

"On the East by the high water mark of Laguna Madre, Rincon Miresoles Survey, made for I. Villarreal, and Rincon del Penascal Survey, made for Rafael Ramirez;

"On the North by Baffins Bay, a tributary of Laguna Madre, and on the Northwest by La Parra Survey made for Alvino & Domingo de la Garza;

"There being a strip of land about 2000 varas wide on the East side of La Parra, San Pedro de las Motas, El Palmito, and La Barreta Surveys, between said surveys and Rincon del Penascal, and Rincon Mirasoles, being a strip approximately 18 miles long and more than a mile wide, between said surveys, containing 11,320 acres, more or less."

The area described in the eighth application set out in plaintiff in error's petition lies to the east of the east lines of La Parra, San Pedro de las Motas, El Palmito and La Barreta. There is no evidence in the record tending to prove, and no contention made in the briefs of plaintiff in error, that the vacancy sought to be established between the two Barretas extends any farther east than the southeast corner of La Barreta. The description in the application is not reasonably construed as intended to include land farther south than the south line of La Barreta, as the extreme southern end of the western boundary of the land to be surveyed is described as being along the east line of La Barreta. The last paragraph in the eighth application describes the area as being a strip of land on the east side of La Parra, San Pedro de las Motas, El Palmito and La Barreta, and lying between said surveys and the Ricon del Penascal and Rincon Mirasoles. It is true that a preceding paragraph of the application states that the area is bounded on the south by Barreta, but that part of the description, when reconciled with the other matters of description in the application, evidently is referable to Barreta as appearing on the official Land Office map of the county, where its north line is on and along the south line of La Barreta.

 There is no identity between a strip of land eighteen miles long north and south and 2000 varas wide east and west, lying east of the east lines of La Barreta and the surveys to its north and a strip of land 20,000 varas long east and west and 2563 varas wide north and south, lying south of the south line of La Barreta. By section 6 of the Act of 1931 one desiring to purchase unsurveyed school land is required to file with the surveyor an application "describing the land in such manner as will enable the surveyor to identify it." There is no such express requirement in Section 8 as to the contents of the written application to be filed with the surveyor by one who desires to lease unsurveyed land for mineral purposes. It is our opinion, however, that an appli-

cation filed under Section 8 should be no less definite in its description of the land than an application filed under Section 6. The application filed with the surveyor under Section 8 is the first of the formal steps to be taken for leasing the land. While it need not and usually cannot contain a detailed or exact description, it must describe in a general way the land described to be leased, for it is intended to designate the land to be surveyed and accurately and particularly described in the field notes prepared and filed following the survey. In other words, the application in order to accomplish the purpose for which it is made must, to use the language of Section 6, "describe the land in such manner as will enable the surveyor to identify it." When it does so and the land described in the application is surveyed, there is established, as there should be, an identity between the land applied for and the land surveyed. An application for survey of a strip of land lying east of the east lines of La Barreta and the surveys to its north would not direct the surveyor to survey and prepare field notes for a strip of land lying between the south line of La Barreta and the north line of Barreta. The surveyor would not be able from that description to identify the land applied for with the land which the plaintiff contends is shown by the evidence to be unsurveyed public school land. Since the applications for surveys made by plaintiff in error do not describe land lying between the south line of La Barreta and the north line of Barreta, there was no error in denying to plaintiff in error an injunction to restrain defendants in error from interfering with a survey of that land.

We do not express an opinion, it being unnecessary to do so, as to the correctness of the decision of the Court of Civil Appeals that there is no unsurveyed land belonging to the State lying between the south line of La Barreta and the north line of Barreta.

The judgment of the Court of Civil Appeals is affirmed.

Opinion adopted by the Supreme Court April 5, 1939.

Rehearing overruled May 24, 1939.