**CRIGHTON v. STATE et al.**

**No. 8750.**

Court of Civil Appeals of Texas. Austin.

April 27, 1939.

Rehearing Denied May 24, 1939.

W. A. Keeling, of Austin, and Llewellyn & Dougharty, of Liberty, for appellant.

Homer C. DeWolfe and Greenwood, Moody & Robertson, all of Austin, for appellee W. P. McComb.

No brief was filed for the State.

McCLENDON, Chief Justice.

This suit involves the right of priority between rival claimants to an oil and gas lease upon 7⅓ acres of public free school land within five miles of producing oil wells under Sec. 8, Chap. 271, p. 454, Gen. Laws 42nd Leg. (1931) Vernon's Ann.Civ. St. art. 5421c, § 8. The land involved is the small rectangle immediately west of the shaded area in map on page 528, 127 Tex., on page 230, 92 S.W.2d (State v. Sullivan), and is the shaded area (A, B, C, D) in the following sketch taken from appellees' brief (see also map at page 868, of 87 S.W.2d):

The contest is between appellant Crighton and appellee McComb.

The latter's application was filed with the County Surveyor December 21, 1931. His field notes were filed in the county surveyor's office November 1, 1932, and in the Land Office November 14, 1932. Meantime, McComb made two additional applications to the county surveyor, one April 21, 1932, and the other October 29, 1932.

Crighton filed his application to lease on December 22, 1931. Later, on the same day, he filed an application to purchase. His field notes were filed with the county surveyor March 31, 1932, and in the Land Office April 11, 1932.

The trial court's judgment awarded the lease to McComb.

The respective contentions of Crighton and McComb may be substantially stated as follows:

Crighton contends:

1. That Sec. 8 of the 1931 Act gives the preference right to lease to the applicant who first files his field notes in the Land Office.

2. That McComb's application was not in compliance with the 1931 Act.

3. That McComb lost whatever rights he may have acquired under his application by failing to file his field notes in the Land Office within 120 days (the time prescribed in Sec. 6 of the 1931 Act, Vernon's Ann.Civ.St. art. 5421c, § 6) after the date of his application.

McComb contends:

1. That he had a reasonable time under all the circumstances within which to file his field notes; that he exercised due diligence in their filing; and that the court's judgment in that regard is supported by substantial evidence.

2. That Crighton's application does not cover the 7⅓ acres in suit.

3. That Crighton's field notes were filed with the county surveyor under his application to purchase, and at some later date were altered so as purportedly to apply to his application for lease. Therefore he never complied with the law regarding filing field notes, at least in so far as concerns his application to lease.

4. That he is entitled in any event to a lease under his application of October 29, 1932 (concededly in every respect in compliance with the law), since Crighton acquired no rights under his application for the reasons stated in his contentions 2 and 3, above.

We will consider these contentions in the above order.

 We think there can be no serious doubt that it was the legislative intent of Sec. 8 to give the preference right to the one first making application for survey with the county surveyor; provided, of course, he complied with the law in other respects. We so held in Stanolind Oil & Gas Co. v. State, Tex.Civ.App., 114 S.W. 2d 699, although the point was not essential to the decision in that case. In the very recent opinions in Walker v. Kenedy, Tex.Sup., 127 S.W.2d 163, and Short v. Carter & Bro., Tex.Sup., 126 S.W.2d 953 (Judge Smedley writing for the Supreme Court) is a very full discussion of Sec. 8, of 1931 Act, Vernon's Ann. Civ.St. art. 5421c, § 8, and the rights acquired thereunder. It seems quite clear to us that there is no essential difference between this and other statutes regulating the sale and lease of public school land, in the respect that where a preference right is given to one complying with the statute

such right has its inception in the initial act required by the statute, and priority in preference inures to the one who first performs such initial act,—in this instance the filing of the application for survey with the county surveyor.

 Crighton's second contention to the effect that McComb's application was not in compliance with Sec. 8 of the 1931 Act is predicated upon the following facts: The application was captioned "Petroleum and Gas Prospect Application," and states that applicant "desires to obtain the right to prospect for and develop petroleum and natural gas in and upon the following described unsurveyed land," etc. Immediately below the caption is the following: "(Under Sections 3 and 4, Chapter 83, Acts approved March 16, 1917, and House Bill No. 358, Chapter 271, of the Acts of the Regular Session of the 42nd Legislature, approved May 29, 1931.)"

We believe there is no substantial difference between the right to prospect and the right to lease in so far as these statutes are concerned. At the time the application was filed the 1931 Act had not been construed by the courts, and it is clear that the application was intended to be made under both the 1917 and 1931 Acts. Since the former was repealed by the latter, the inclusion of the former in the above quotation from the application may be disregarded as surplusage. While we have no serious doubt upon this issue, it is unimportant if our conclusions below as to the invalidity of Crighton's application are correct.

 While much can be said from the standpoint of policy in support of Crighton's third contention to the effect that the 120-day provision in Sec. 6 should be read into Sec. 8 of the 1931 Act, we do not find any warrant for such construction in the Act itself, which expresses the legislative intent. As stated in Short v. Carter & Bro., above [126 S.W.2d 957]: "Thus it is apparent that the Act is a comprehensive statute, authorizing the sale and the leasing for minerals of all unsold public school land, both surveyed and unsurveyed, and prescribing the terms and conditions of sales and leases. It is a statute complete in itself, except that by reference it incorporates some of the provisions of the Revised Civil Statutes."

The omission in Sec. 8 of a time limit in which to file field notes in the Land Office and its inclusion in Sec. 6 cannot

be interpreted as other than deliberate. It is hardly to be conceived that in a matter of this importance the legislature would have left its intention to surmise or conjecture, when it would have been so simple to include a time limit in Sec. 8, if its purpose had been to do so. Absent a stated time for filing the field notes, the general rule is that a reasonable time under all the circumstances of the particular case will be implied.

Since the question of McComb's diligence in procuring his survey and filing his field notes in the Land Office is presented as a question of law, it becomes necessary to set out somewhat at length the record showing in this regard. The following unchallenged statement from McComb's brief we believe substantially states the evidence on this point: "This appellee filed his application to lease with the county surveyor on December 21, 1931. Upon filing the application appellee immediately made arrangement with Mr. Evans, the county surveyor, to make the survey and return the field notes. Pursuant to this arrangement which appellee made with the county surveyor, appellee caused the said county surveyor to return and file in the General Land Office a report and sketch which depicted the work that had been done by the County Surveyor under the appellee's application of December 21, 1931. This report and sketch were filed in the Land Office on January 20, 1932, less than a month after the filing of appellee's original application. By the agreement of the county surveyor to make the survey and by the filing of the preliminary report and sketch, this appellee was led to believe that the county surveyor was proceeding with the survey in keeping with his agreement to make the survey; and this appellee relied upon such agreement until March 1932, when he discovered that Mr. Broussard, the Deputy County Surveyor, had run a survey for the appellant which was in conflict with the land covered by the appellee's application of December 21, 1931. Upon learning of the survey in conflict with appellee's application, this appellee went to Mr. Broussard and told him of his application of December 21st and asked the deputy county surveyor to have the matter corrected and discussed with Mr. Broussard the continuation of the survey that had been started by Mr. Evans. Mr. Broussard promised the appellee that he would take the matter up with Mr. Evans. Mr. Evans had agreed to make the survey for appellee and neither Mr. Evans nor his deputy had ever refused to make the requested survey for appellee. Notwithstanding this conversation with Mr. Broussard and the assurances that the work would be completed, nothing was done either by Mr. Evans or by Mr. Broussard, and in April, 1932, this appellee renewed his application by filing with the county surveyor a second application on the land involved and again discussed the matter of a survey with Mr. Evans and again received the promise of Mr. Evans that the survey would be made and completed, but no survey was made either by Mr. Evans or Mr. Broussard, and appellee then discovered that Mr. J. E. Franks had filed an application to lease on the eastern part of the land covered by appellee's application, which discovery was not made until the eastern portion had been surveyed for Mr. Franks by a licensed state surveyor, Mr. E. S. Atkinson. After discovering the application on and the survey of the eastern portion, this appellee secured the services of the said Mr. E. S. Atkinson to survey the land upon which appellee had filed. This was in October, 1932, and on October 29, 1932, appellee renewed his application by filing a third application to lease on the same land, expressly stating therein that no rights were waived which were secured under the two previous applications. Pursuant to this agreement with Mr. Atkinson, the survey was promptly made and the field notes were filed in the General Land Office on November 14, 1932. During the interim from December 21, 1931, at which time appellee made the first request of the county surveyor for a survey, up to the time Mr. Atkinson was engaged to make the survey, the county surveyor never at any time refused to make the survey but had constantly agreed to complete the same under the application of December 21, 1931. The appellee relied upon these representations of the county surveyor until he was convinced that Mr. Evans was not going to complete the work that he had started and at that time appellee had the work finished by Mr. Atkinson."

There was never any voluntary abandonment by McComb of his application; but on the contrary a continuing effort on his part to procure a survey. His only alternative was to bring a mandamus proceeding against the county surveyor. Had

there been a refusal on the part of the latter to make the survey, or such conduct on his part as to indicate that he had no intention to comply with his promise to do so, no doubt McComb would have been required to institute proceedings to compel the survey. The above evidence was sufficient to support a finding that McComb was not derelict and lost no right by the delay.

■■■ We sustain McComb's second contention to the effect that Crighton's application did not embrace the 7⅓ acres in suit. The application describes the land to be surveyed as being bounded as follows:

"On the North by the Theodore Slade Survey, Abstract 500;

"On the East by the Ransom House Survey, Abstract 244, and the S. Y. Sitton Survey, Abstract 688;

"On the South by the E. P. Brown Survey, Abstract 677;

"On the West by the C. B. Stewart Survey, Abstract 476."

The field notes of the Slade called for its south line to extend east to the Ransom House. A recognition of the validity of this call over distance (3,000 varas) would have included the 7⅓ acres in the Slade. The owners of the Slade were contending that its south line extended to the Ransom House and consequently the 7⅓ acres was included in the Slade and was not vacant land. The Sullivan suit which finally adjudicated that the Slade south line was only 3,000 varas long and terminated approximately at the east line of the Stewart was not filed until September 6, 1933, and the Supreme Court's opinion was not handed down until March 25, 1936. The boundaries in the application clearly indicate that the east and west lines ·of the land to be surveyed did not extend farther north than the northern termini of the east and west lines respectively of the Stewart and Ransom House surveys. Walker v. Kenedy, above, construed Sec. 8 in this regard as follows [127 S.W.2d 167]: "By Section 6 of the Act of 1931 one desiring to purchase unsurveyed school land is required to file with the surveyor an application 'describing the land in such manner as will enable the surveyor to identify it'. There is no such express requirement in Section 8 as to the contents of the written application to be filed with the surveyor by one who desires to lease unsurveyed land for mineral pur-- poses. It is our opinion, however, that an application filed under Section 8 should be no less definite in its description of the land than an application filed under Section 6. The application filed with the surveyor under Section 8 is the first of the formal steps to be taken for leasing the land. While it need not and usually cannot contain a detailed or exact description, it must describe in a general way the land desired to be leased, for it is intended to designate the land to be surveyed and accurately and particularly described in the field notes prepared and· filed following the survey. In other words, the application in order to accomplish the purpose for which it is made must, to use the language of Section 6, describe 'the land in such manner as will enable the surveyor to identify it.'"

■■■ With reference to McComb's third· contention the record shows without contradiction that Crighton's field notes as filed and recorded by the county surveyor stated on their face that the survey was made for Crighton "by virtue of his application filed with the surveyor of Montgomery County, under the laws regulating· the·sale of unsurveyed school land." The field notes on file in the Land Office show the words, "for mineral lease," interlined after the word "application," the· words, "Dec. 22, 1931," interlined after the word "County," and the word "sale" eliminated by running a line through it and the word "leasing" interlined in its· stead. So that the above quotation with the interlining and elimination reads: "by virtue of his application for mineral lease filed with the Surveyor of Montgomery· · County, Dec. 22, 1931, under the laws regulating the leasing of unsurveyed school· land." The field notes bore an indorsement by the deputy county surveyor classifying. the land, which was verified by him at Austin, April 11, 1932.

Crighton had two applications on file, one to lease, which was prior in time of filing, and the other to purchase. Assuming that he had the right to proceed under either or both applications, it is clear that no steps were taken under the application to lease until some time subsequently to· filing the field notes with the county surveyor. These field notes as then presented were made and filed under the application· to purchase. When, by whom or whose authority, or under what circumstances the

alterations were made is unexplained. The indorsement on the field notes classifying the land was sworn to at Austin by the deputy county surveyor making the survey, on April 11, 1932, the day the field notes were filed in the Land Office. This affidavit had no other purpose than to comply with the law regarding purchase—not the leasing—of school land. The above facts clearly show that up to the very time of filing the field notes in the Land Office, Crighton was proceeding under his application to purchase alone. We do not believe that he could abandon his purchase application and proceed under his lease application by the process of altering the field notes at this stage of the proceeding. The record of the filing with the county surveyor was a public record, and could not be legally changed by alteration. The certificate of filing and recording with the county surveyor gave the field notes the character of a public document, and when filed in the Land Office they became a part of the archives of that office. This holding is, of course, unimportant if our other conclusions, above, are correct.

From the foregoing it follows that Mc-Comb's fourth contention should be sustained.

The trial court's judgment is affirmed.