GEORGE JUENCKE, RELATOR, v. J. J. TERRELL, COMMISSIONER.

No. 1286. Decided November 14, 1904.

**1.—School Land—Contested Title.**

A Commissioner of the General Land Office can not be compelled to sell as school land, to an applicant, lands as to which there is a dispute as to the title between the State and parties claiming under a prior though incomplete grant of the same by the States of Coahuila and Texas. (Pp. 238, 239.)

**2.—Same—Settling Title.**

The policy evidenced by the eighth section of the Act of February 23, 1900, appropriating the public domain to the school fund, was to first establish its title to lands claimed by third parties, through suit brought by the Attorney-General, before putting such lands upon the market for sale. (P. 239.)

Motion for permission to file petition for mandamus in the Supreme Court.

*L. D. Brooks,* for relator.

GAINES, CHIEF JUSTICE.—This is a motion for leave to file a petition for a writ of mandamus against the Commissioner of the General Land Office. The facts relied upon for the grant of the writ, briefly stated, are as follows: In the year 1904 the relator, desiring to purchase a tract of 640 acres of land in Liberty County under the Act of April 15, 1901, amendatory of the sixth section of the Act of Feb-

ruary 23, 1900, which set apart the unappropriated public domain of the State to the public school fund, and provided for its sale, filed his application to purchase, caused a survey to be made by the surveyor of the county and the application and field notes to be returned to the Land Office. For the purposes of this opinion it may be assumed that all the requirements of the statute were complied with. The Commissioner refused to approve the field notes and to classify and value the land and to place it upon the market, because the survey was "in conflict with what appears to be a prior and incomplete grant of a league of land made by the governments of the States of Coahuila and Texas to Philip P. Dever." The petition further alleges in substance, that R. M. Vaughan and F. P. Works claim to be owners of, or to have some interest in the tract sought to be purchased, and that they claimed under the incomplete grant before mentioned.

We are of the opinion that where there is a dispute as between the State and another party as to the title to a tract of land, the Commissioner can not be compelled to make a sale. It is hardly within the scope of his functions or duties to pass upon titles in such cases; and we should be reluctant to hold that the Legislature intended to impose such duty upon him, in the absence of language in the statute showing clearly that intent. It is known that at the date of the original act which appropriated these lands to the school fund there were many large bodies of land lying in the State held by persons who asserted title thereto, and whose titles had never been adjudicated and were not conceded. It is unreasonable to suppose that the Legislature intended to put such lands upon the market for sale, and thus to turn loose upon the courts a flood of litigation as between the purchasers and the adverse claimants. On the contrary, we think that the purpose of the Legislature with reference to them is shown by the eighth section of the act. That section in part is as follows: "When any of the lands described in this act, or any of the other public lands of the State held or owned by any fund, or any land in which this State or any such funds have an interest, are held, occupied or claimed by any person or association or corporation, adversely to the State, or to such fund, it shall be the duty of the Attorney-General to institute suit therefor," etc. From this we think it is to be inferred that the policy of the Legislature in reference to lands which were claimed by third parties was first to establish its title before putting them upon the market for sale; and that it was not intended that they should be sold until the controversy between the State and the claimants had been adjudicated.

The present Constitution contains this provision: "* * * all genuine land certificates heretofore or hereafter issued shall be located, surveyed or patented only upon vacant and unappropriated public domain, and not upon any land titled or equitably owned under color of title from the sovereignty of the State, evidence of the appropriation of which is on the county records or in the General Land Office; or when the appropriation is evidenced by the occupation of the owner, or of

·some person holding for him." Const., art. 14, sec. 2. This provision does not prohibit the Legislature from providing for the sale of such lands; but it very clearly evinces the policy of the State not to encourage litigation by permitting· the acquisition from the State of lands which appear upon the official records, or by actual occupancy, to be ·claimed adversely to it. It should not lightly be assumed that the Legislature intended to depart from that policy.

Our conclusion is that section 6 of the act under construction applied only to such lands as appeared upon the maps and records of the General Land Office not to be claimed by other parties, and to such as had been adjudged to the State, if ever so claimed.

For these reasons the motion is overruled.

*Overruled.*