## E. COCKRELL v. W. O. WORK, COUNTY SURVEYOR, ET AL.

No. 5516.   Decided May 13, 1933.
(61 S. W., 2d Series, 787.)

*W. D. Gordon,* of Beaumont, for plaintiff in error.

Plaintiff in error's case is not barred or precluded by the proceedings had in 1904 in the case of Giraud v. Giddings. (No. 558, District Court Record of Chambers County, Texas). Juencke v. Terrell, 98 Texas, 237, 82 S. W. 1025; Southern Pine Lumber Co. v. Consolidated La. Lbr. Co., 217 Fed. 719, 133 C. C. A., 479.

*Orgain, Carroll & Bell, Thomas J. Batten,* and *Joiner Cartwright,* all of Beaumont, *John B. Corbett,* of Bay City, *A. W. Marshall,* of Anahuac, *Andrews, Streetman, Logue & Mobley, E. J. Fountain, Jr., John C. Townes, John E. Green, Jr., G. P. Dougherty* and *H. F. Montgomery,* all of Houston, *J. Llewellyn* and *E. B. Pickett,* of Liberty, *T. L. Foster, J. W. Timmins,* and *Martin A. Row,* all of Dallas, for defendants in error.

The court erred in holding that the plaintiff in the case of Giraud v. Giddings was without any right or authority to file and maintain said suit; and that the judgment therein does not operate as a bar against plaintiff, Cockrell, in this suit. Cox v. Robison, 103 Texas, 354, 127 S. W., 806; Anderson v. Robison, 114 Texas, 249, 267 S. W., 456; State v. Dayton Lbr. Co., 106 Texas, 41, 155 S. W., 1178.

Even though it be conceded that the State of Texas is not precluded by the judgment in the case of Giraud v. Giddings, nevertheless, in that said proceeding was one in rem, determining the status of said land as patented land and not unappropriated public domain, the result in said suit is binding upon all the world, including the present plaintiff, other than the State of Texas. Freeman on Judgments, vol. 2, sec. 727; People v. Russell, 283 Ill., 520, 119 N. E., 617; Ely v. Moore (Com. App.), 11 S. W. (2d) 297; Schley v. Blum, 85 Texas, 551.

*Robert Lee Bobbitt,* Attorney General, *R. D. Cox., Jr.,* and *C. W. Trueheart,* Assistant Attorney General, and *Thornton Hardie,* of El Paso, as amicus curiae.

MR. JUDGE SHORT of the Commission of Appeals delivered the opinion for the court.

The opinion of the Court of Civil Appeals in this case (17 S. W. (2d) 174) contains a full statement of the nature and result of this litigation, which statement we adopt. The District Court of Chambers County sustained a general demurrer to the plaintiff's petition and dismissed the plaintiff's case. The Court of Civil Appeals held that this was error, and reversed and remanded the case for another trial. We think the Court of Civil Appeals was correct in this particular. However, the Court of Civil Appeals sustained the trial court in holding that the defendants' plea of res judicata, which is set out in the opinion of the Court of Civil Appeals, presented a defense to the plaintiff's cause of action. The plaintiff in error, in his application for the writ of error, presents only one assignment of error, which is as follows: "The Court of Civil Appeals erred in its conclusion that the defendants' plea of res judicata interposed in the trial court, by setting up the proceeding of Giraud v. Giddings et al., and holding that the proceeding was res judicata of this case." The plaintiff in error's original petition was filed April 2, 1923, and names W. O. Work, in his capacity of County Surveyor of Chambers County, as defendant. The petition alleged that the plaintiff had filed his application with the Commissioner of the General Land Office, setting up

his desire to purchase a portion of the unsurveyed land belonging to the school fund of Texas, and asking to buy the same in accordance with the description and designation fully set forth in the petition; that this application was refused by the Commissioner of the General Land Office, declining to recognize the existence of the area sought to be purchased by the plaintiff as public school land, and refused to authorize the survey to be made; that said ruling of the Commissioner of the General Land Office was based upon want of sufficient information to satisfy him of the existence of said vacancy sought to be purchased, and rendered it necessary to establish in this proceeding the boundaries of the titled and patented lands abutting upon and adjacent to the said area sought to be declared as vacant, and purchased by the plaintiff; that the land referred to is vacant, unsurveyed school land, and is especially described in the petition; that the vacancy so existing is determined primarily by the true location of the north boundary line of the William Bloodgood headright league survey, and this survey is desribed in the petition; the plaintiff then prayed that a decree be entered fixing and establishing the boundaries as set forth in this petition, and fixing and establishing the existence by metes and bounds of said unsurveyed public school land and asked that the defendant, Surveyor, be commanded in his official capacity, to make and return to the General Land Office his official survey showing said vacancy, in accordance with the decree of the court. On October 28, 1926, the County Surveyor of Chambers County filed an amended original answer, setting up that he was informed and believed that the land prescribed in the petition and claimed by plaintiff to be unsurveyed school land, is now claimed by various and sundry parties, all of whom are named in his answer, and the defendant impleaded each and all of said defendants, and asked that they be served with citation in full compliance with the law, and to be required to set up their respective claims to the land, or any interest therein claimed by them. These people who were impleaded filed an answer and a trial was had, resulting as above stated. This answer so far as it relates the assignment of error, embraced the proceedings in Cause No. 558 on the docket of the District Court of Chambers County, wherein the petition was filed on the 15th day of October, 1904, by E. A. Giraud against Geo. H. Giddings, in his capacity as County Surveyor of Chambers County, and others, wherein Giraud was seeking to have surveyed an unappropriated public domain belonging to the school fund, which is the same land in part which the plaintiff

in error is now seeking to have surveyed, and alleged it to be vacant, unsurveyed school land. This answer further averred that said suit No. 558 was filed and prosecuted by the plaintiff, Giraud, against the defendant, Giddings, in his official capacity as County Surveyor of Chambers County, and this suit is being prosecuted by the plaintiff herein against W. O. Work, as County Surveyor of said county. It was further averred in said answer that other persons were named as defendants in suit No. 558, who were setting up a claim to the land involved in that suit, and that whatever title to said land, which was then vested in those defendants in said suit, is still vested in them, or their successors in title, and that these defendants in this suit were also defendants in suit No. 558, which was prosecuted for the purpose of having it determined by this same court; that the land claimed by Giraud was vacant and unappropriated public domain belonging to the public school fund of this State and that the plaintiff in this cause is making the same claim and asserting the same right. It is also averred in the answer that in suit No. 558 the District Court of Chambers County, on the 17th day of March, 1905, by its final judgment, determined, adjudged and decreed that the land involved in that suit was not vacant and unappropriated public domain and it was also determined by the final judgment in cause No. 558 the actual location and boundaries of the above mentioned William Bloodgood League, and that the very issues in respect to the actual location of the boundary lines of said surveys upon the ground, which were involved in said suit No. 558, are again involved in this suit, and further that the effect of the final judgment rendered in that suit, by which the boundary lines were determined and actually located upon the ground, was to determine, adjudge and decree that the land now involved in this suit was not then and is not now vacant and unappropriated public domain. It is further averred in said answer that said final judgment of the District Court of Chambers County rendered in suit No. 558 was not appealed from, nor has it been in anywise set aside or otherwise altered to any extent, but said judgment as rendered by said court still remains in every respect in full force and effect as a binding and valid judgment of said court. To this answer was appended a certified copy of plaintiff's petition in said suit No. 558, and also certified copy of the answer filed in said cause by the defendant therein, George H. Giddings, as County Surveyor, and also a copy of the final judgment rendered in said cause.

As heretofore stated, the trial court sustained this plea of

res judicata, and the Court of Civil Appeals held that the trial court was correct in its ruling on this subject. The discussion of the assignment of error involved the construction of Article 5323 R. C. S., 1925, as well as the constitutionality of that statute. The Supreme Court has elaborately discussed Article 5323 in Van Camp v. Gulf Production Company et al., 122 Texas, 383, 61 S. W. (2d) 773. We refer to the opinion in that case, wherein it is held that this statute is constitutional and therefore valid, and inasmuch as this statute was in force at the time this suit was filed, and since it appears that the plaintiff in error brought this suit, by virtue of the provisions of that statute, his rights must be tested by it. There is no contention made that the plaintiff in error did not pursue the course prescribed by that statute, but the real question in this case is whether, previous to the enactment of this statute, which was in 1919, there was a law of a similar nature guiding the citizen in doing the things which it is shown was done by the plaintiff in cause No. 558. The plaintiff in error contends that until Article 5323 was enacted in 1919, there was no law permitting a private citizen to have adjudicated in the courts of the country, the question whether a certain territory belonging to the unappropriated public school fund of the State, was subject to sale, where there was an alleged conflict with previous patented surveys. The defendants in error, upon the contrary, claim that the provisions of Article 5323 were in effect at the time the proceedings were had in cause No. 558, and also claim that the Act of February 23, 1900, General Laws, First Called Session, pp. 29 to 35, and the Act of April 15, 1905, passed at a Regular Session of the Legislature, p. 253, wherein there was an amendment of the Act of 1900, and Article 5432, Vernon Sayles Texas Civil Statutes, 1911, which was an Act of 1907, at a Regular Session, p. 490, evidence the same general policy of the law as does Article 5323, and authorized a citizen to have determined by the courts the question whether a certain territory was a part of the unappropriated public domain belonging to the public free school fund, in the manner shown to have been pursued in No. 558. The Court of Civil Appeals, as well as the trial court, apparently concluded that inasmuch as the ultimate fact to be determined in this cause, was determined in cause No. 558, in a proceeding had in a court of competent jurisdiction, where all the parties at interest were present and participating, and a final judgment rendered, establishing this ultimate fact, that the judgment concluded the whole world, and that the plaintiff in error, in this case, was bound by the judg-

ment rendered in cause No. 558 under the doctrine of res judicata.

■ We think the opinion in Van Camp v. Gulf Production Company, supra, must be construed as holding that Article 5323, enacted in 1919, is the only. act by virtue of which the citizen acting as the plaintiff in error in this case has acted, could maintain a suit to determine whether a certain territory was a part of the unappropriated public domain of the State, belonging to the school fund, and that the other acts of the Legislature, upon which the defendants in error rely, fail to give to the citizen the same authority to act in the premises, which is given by Article 5323. In other words, where there is an action such as is involved in this case, to determine whether a vacancy exists between patented lands, a part of the unappropriated public domain belonging to the school fund, that until the enactment of Article 5323, by the express provisions of the law in force at that time, only the Attorney General of the State was authorized to bring a suit, having for its purpose the ascertainment of the disputed fact.

The Court of Civil Appeals classed Giraud v. Giddings as identical with this suit, and in effect declares that Giraud acquired from the State a vested right as against all other parties enabling him to prosecute his suit for mandamus against Giddings, the Surveyor. We do not think the suits were identical, and we do not think Giraud had any vested right as against all other parties, which would enable him to prosecute a suit for mandamus against Giddings, the Surveyor.

In Juencke v. Terrell, 98 Texas, 237, 82 S. W., 1025, it is said:

"The Court below held that as the plaintiff had title and was in possession of the surveys described in his petition, and was in possession of all the land comprised in his pasture, which was enclosed by a fence, and as the surveys referred to called for each other and apparently connected, the defendant, not showing any title or claim in himself to the land in controversy, was not entitled to have the question of a vacancy between any of the surveys litigated."

In that case Hickey, the defendant, averred that he was in possession of 380 acres of land inside of the plaintiff's pasture and, that it was public domain, set apart for the benefit of the State school fund. He did not show that he had taken the necessary steps to purchase the land from the State, or had acquired any rights thereto.

In the Juencke v. Terrell case, Chief Justice Gaines, con-

struing the law under which Giraud attempted to mandamus Giddings, denied a right of mandamus against the Land Commissioner upon the application of Juencke, using the following language:

"For the purposes of this opinion it may be assumed that all the requirements of the statute were complied with. The Commissioner refused to approve the field notes and to classify and value the land and to place it upon the market, because the survey was 'in conflict with what appears to be a prior and incomplete grant of a league of land made by the governments of the State of Coahuila and Texas to Phillip P. Dever.' The petition further alleges in substance, that R. M. Vaughan and F. P. Works claim to be owners of, or to have some interest in the tract sought to be purchased, and that they claimed under the incomplete grant before mentioned.

"We are of the opinion that where there is a dispute as between the State and another party as to the title to a tract of land, the Commissioner cannot be compelled to make a sale. It is hardly within the scope of his functions or duties to pass upon titles in such cases; and we should be reluctant to hold that the Legislature intended to impose such duty upon him, in the absence of language in the statute showing clearly that intent. It is known that at the date of the original act which appropriated these lands to the school fund there were many large bodies of land lying in the State held by persons who asserted title thereto, and whose titles had never been adjudicated and were not conceded. It is unreasonable to suppose that the Legislature intended to put such lands upon the market for sale, and thus to turn loose upon the courts a flood of litigation as between the purchasers and the adverse claimants. On the contrary, we think that the purpose of the Legislature with reference to them is shown by the eighth section of the act. That section in part is as follows: 'When any of the lands described in this act, or any of the other public lands of the State held or owned by any fund, or any land in which this State or any such funds have an interest, are held, occupied or claimed by any person or association or corporation, adversely to the State, or to such fund, it shall be the duty of the Attorney General to institute suit therefor,' etc. From this we think it is to be inferred that the policy of the Legislature in reference to lands which were claimed by third parties was first to establish its title before putting them upon the market for sale; and that it was not intended that they should be sold until the controversy between the State and the claimants had been adjudicated."

So it is manifest that the only authority given to declare a vacancy in such case, under the Act of 1900, and its amendment of 1901, lay with the Attorney General of the State, as expressly provided in the Act, and not with an applicant who makes an application to the County Surveyor, seeking to purchase the land adversely held and claimed by others.

Giraud had no power or authority under the Act of 1900 and its amendment of April, 1901, to bring a suit to establish a vacancy. The State never authorized such a proceeding, and that right never existed in behalf of any applicant to purchase the public lands until the Statute of 1919 (Article 5323), under which the plaintiff in error filed this suit. The assertion of such a right by Giraud was denied by the very act in force at the time he filed his mandamus suit against the surveyor. The Land Commissioner could not have awarded Giraud the land, irrespective of whether the county surveyor had made the survey requested or not. He had no power under the law to invest Giraud with any right to that land, admittedly then claimed by third parties under grants from the same sovereignty. The discretion was not lodged with the Commissioner of the General Land Office, under that Act, to sell such land to Giraud. No agency was authorized by any law, then existing, to determine the merits of the conflicting claims as to vacancy except under the 8th Section of the Act of February 23, 1900, which empowered the Attorney General of Texas, by suit, to establish such vacancy, if it existed. The County Surveyor could not do it; the applicant to purchase the land could not do it. The State had exclusively conferred that power upon the Attorney General by appropriate proceedings therein described, to determine such issue. Therefore, Giraud was not clothed with any authority or power to sue adverse claimants and determine a vacancy, or to compel the County Surveyor to make and return a survey in that case. Southern Pine Lumber Company v. Consolidated Louisiana Lumber Co., 133 C. C. A., p. 483, 217 Fed., 719.

Since the right here involved was first conferred by law in the Act of 1919 (Article 5323), it follows as a matter of course that under no theory of res judicata could the proceedings in the Giraud case affect the issue at bar. The 29th Legislature, by the Act of April 15, 1905, sec. 8, p. 166, uses the following language:

"When any land, lying between older surveys, is held by the Commissioner of the General Land Office to be unsurveyed or vacant land appropriated to the public school fund by the Act of February 23, 1900, and is sold as such under the provisions

of this Act, and thereafter any suit arises between the owner or owners of such older surveys, and the purchaser from the State or his vendees, any final judgment rendered in such suit shall be deemed and held conclusive as to the existence or non-existence of such vacancy; provided, if in any suit judgment is obtained through collusion or fraud against the State, the same may be set aside and vacated at the suit of the State, any time within five years thereafter."

In other words, the discretion of the Land Commissioner, under the conditions of that Act, could be exercised to make a sale to an applicant to purchase public domain, though claimed adversely by third parties, and the power was given by that law to that purchaser, asserting rights under the State, to litigate, in his own name, "the existence or non-existence" of such vacancy with third parties. And the judgment rendered in such litigation, not only bound him and his adversaries in the suit, but bound the State of Texas, because it had, through its Legislature, authorized such proceedings. Here then, for the first time, was an agency created by the State with the power to determine such an issue of vacancy apart from that which had conclusively been vested by the previous law in the Attorney General of the State. That is to say, that where the Commissioner of the General Land Office holds the vacancy to exist under that act, and has made a sale of same by virtue thereof, the purchaser had the right to bring a suit and the result of that suit would be binding on all parties. When Giraud brought his suit there was no law in existence authorizing anyone, except the Attorney General, to bring a suit to determine whether a certain territory claimed against the State was a part of the unappropriated public domain and to have a court of competent jurisdiction to declare the same to be vacant. By the Act of April 15, 1905, which was enacted after Giraud brought his suit, the law did give to the Commissioner of the General Land Office, where the latter determined that a certain territory belonged to the unappropriated public domain, the power to sell the same to a purchaser, and also gave to such purchaser the right to bring a suit against adverse parties involving the ownership of the disputed territory. However, in this case, the Commissioner of the General Land Office denied the existence of any such vacancy, and therefore the provisions of the law of 1905 did not apply, and there was no law authorizing such a suit to be instituted except by the Attorney General, until 1919, which is now Article 5323 R. S., 1925. This law is valid. Van Camp v. Gulf Production Company, supra. Until Article 5323

was enacted there was no law in existence except that of the Act of April 15, 1905, which authorized anyone to bring a suit against adversaries claiming land as patented, except the Attorney General except where the Commissioner of the General Land Office had sold the land, and under the provisions of the Act of April 15, 1905, a purchaser was authorized to bring suit.

The Court of Civil Appeals also held that the judgment in the Giraud case was res judicata of the matters involved in this case, on the ground that the judgment in the Giraud case was one in rem. It is only necessary to say that the State was not bound by the result of that suit, since it was not a party, whereas, under the conclusion reached in Van Camp v. Gulf Production Company, supra, the State will be bound by any judgment rendered in this suit. We therefore think the Court of Civil Appeals erred in holding that the plea of res judicata was sustained under the idea that the judgment was one in rem. We do not think it is necessary to discuss this point further.

The assignment of error should therefore be sustained. However, the Court of Civil Appeals having reversed and remanded the case, we recommend that its judgment be affirmed, and the cause be remanded for a trial upon the merits, in accordance with this opinion.

The foregoing opinion is adopted as the opinion of the Supreme Court, and judgment will be entered in accordance therewith.

C. M. CURETON, Chief Justice.