EARL H. SHORT ET AL V. W. T. CARTER AND BROTHER ET AL.

No. 7503. Decided April 5, 1939.
Rehearing overruled May 24, 1939.
(126 S. W., 2d Series 953.)

*Henry H. Brooks,* of Austin, *Bryan, Suhr, Bering & Bell,* of Houston, *William McCraw,* former Attorney General, *Gerald C. Mann,* Attorney General, *H. Grady Chandler, Russell Renfro, Robt. E. Kepke,* and *Henry S. Moore,* Assistants Attorney General, for plaintiffs in error.

It was error for the Court of Civil Appeals to hold that since the land in controversy is not delineated on the official land office map as unsurveyed land belonging to the State the Land Commissioner is not vested with authority under the statutes, as amended, to determine whether said land was vacant, and if he determines it to be vacant to issue a mineral lease thereon to applicants, who, by reason of discovery, have acquired a prior right thereto. Vernon's Anno. Civ. State., Art. 5421c, sec. 8; Weatherly v. Jackson, 123 Texas 213, 71 S. W. (2d) 259; Wintermann v. McDonald, 129 Texas 275, 102 S. W. (2d) 167, 104 S. W. (2d) 4.

*V. A. Collins,* of Livingston, *Baker, Botts, Andrews & Wharton, C. R. Wharton, Dillon Anderson, John C. Townes, Vinson, Elkins, Weems & Francis* and *R. E. Seagler,* all of Houston, for defendants in error.

Unsurveyed land which may be leased by the Commissioner of the General Land Office under Section 8 of the Act of 1931 (page 452) must be land which appears on the official map of said office as unsurveyed land. Bradford v. State, 121 Texas, 515, 50 S. W. (2d) 1065; Finberg v. Gilbert, 104 Texas 539, 141 S. W. 82; Holmes v. Yates, 122 Texas 428, 61 S. W. (2d) 771.

The Land Commission is not vested with judicial power to decide doubtful questions of title in a way to bind or prejudice the citizen who has a bona fide claim to land. An adjudication of title must be made before an award can be made by the Commissioner or a patent issued by the State. Juencke v. Terrell, 98 Texas 237, 82 S. W. 1025; Cockerell v. Work, 17. S. W. (2d) 178.

*John J. McKay, Chas. N. Avery, Jr., W. T. Williams, Jr., Sterling Williams* and *Charles L. Black,* all of Austin, *Joseph W. Moore* and *Fouts, Ammerman & Moore,* all of Houston, filed briefs as amici curiae.

MR. JUDGE SMEDLEY, of the Commission of Appeals, delivered the opinion for the Court.

Defendants in error, the owners of the record title to more than three thousand acres of land in a league of land titled to Andres Morales by the State of Coahuila and Texas in the year 1835, sued plaintiff in error McDonald, Commissioner of the General Land Office, and plaintiffs in error Short, Gholson and Sullivan (together with other parties who did not appeal from the trial court's order) in the District Court of Polk County, to enjoin the Commissioner of the General Land Office from issuing leases to Short, Gholson and Sullivan upon applications filed by them, under the provisions of Section 8 of Chapter 271, Acts Regular Session of the 42nd Legislature, approved May 29, 1931 (Article 5421c, Vernon's Annotated Texas Civil Statutes), for mineral leases of an area alleged by defendants in error to lie within the true boundaries of the Morales league and to conflict with land in said league owned by them, and for injunction against plaintiffs in error Short, Gholson and Sullivan to restrain them from further prosecuting their applications for leases or from executing any conveyances of interests in them. The applications for mineral leases were made on the belief of the applicants that the area is unsurveyed land not within the bounds of the Morales league. The parties will hereinafter be referred to as they were designated in the trial court.

The district court first heard and overruled a plea to the jurisdiction and a plea in abatement filed by the defendant McDonald, Land Commissioner, and a plea in abatement filed by the defendant Short, Gholson and Sullivan. The grounds of the Land Commissioner's plea to the jurisdiction and plea in abatement are that only the Supreme Court has jurisdiction to issue a writ of injunction against the Commissioner of the General Land Office to restrain him from issuing a mineral lease; that the suit is in effect a suit against the State, in that the plaintiffs seek to have the court adjudicate that the State has no interest in the land described in the applications for leases and in that the plaintiffs undertake by injunction to restrain the Commissioner of the Land Office from performing duties imposed upon him by a valid statute to de-

termine the boundaries of the land involved and whether the vacant area exists and thereafter to execute the leases; and that only the State of Texas can question the Commissioner's determination of such questions. For abatement of the suit the other defendants pleaded the pendency in a District Court of Travis County of a suit filed by the State of Texas for the title and possession of the same land as that involved in this suit and an order which had been entered in the suit in Travis County overruling a plea filed by the plaintiffs herein by which they sought to abate that suit on account of the pendency of this suit. The defendants Short, Gholson and Sullivan also pleaded in abatement of this suit that the State of Texas is a necessary and indispensable party and that the suit is in effect against the State.

After the plea to the jurisdiction and the pleas in abatement were overruled the court heard evidence on the plaintiffs' application for temporary injunction and issued an injunction restraining and enjoining the Commissioner of the General Land Office, pending final hearing of the cause on the merits, from granting mineral leases to any of the other defendants and restraining and enjoining the other defendants from further prosecuting their applications for mineral leases or from executing any conveyances of interest therein. The Commissioner of the Land Office and the defendants Short, Gholson and Sullivan appealed from this order. The appeal bond of the three defendants last named is so drawn as to indicate an intention or an effort to appeal also from the order overruling their plea in abatement. The order of the trial court granting the temporary injunction was affirmed by the Court of Civil Appeals, which held that Section 8 of the Act of 1931, (Article 5421c, Vernon's Annotated Texas Civil Statutes) gave the Commissioner no power to execute mineral leases covering the area described in the applications made by defendants Short, Gholson and Sullivan, that his threatened act to do so was a tort to which the State was not a party, and that the State was not a necessary party to the suit to enjoin him from performing such unauthorized act. The Court of Civil Appeals further expressed the opinion that there is no merit in the plea in abatement on account of the pendency of the suit in Travis County, because the issues in the two cases are not the same and a judgment in this case would not be res adjudicata of any issue presented in that suit. 121 S. W. (2d) 486.

The decision of the Court of Civil Appeals, that the Commissioner of the General Land Office was wholly without power

to execute mineral leases upon the applications made by Short, Gholson and Sullivan and that therefore he could be enjoined from executing them, is based upon its construction of Section 8 of the Act of 1931 as giving preference rights to acquire mineral leases only upon areas which actually appear on the official Land Office maps as unsurveyed land. The first paragraph of said Section 8 provides that certain designated areas, as islands, salt water lakes, etc., "and all unsold public free school land, both surveyed and unsurveyed, shall be subject to lease by the Commissioner to any person, firm or corporation for the production of the minerals, except gold, silver, platinum, cinnibar and other metals, that may be therein or thereunder in accordance with the provisions of this Act and subdivision 2, Chapter 4, Title 86, Revised Civil Statutes of 1925 relating to the leasing of public areas in so far as the same is not in conflict herewith." The provisions of the part of Title 86 here referred to need not be stated for they have no bearing upon the question under consideration. The second paragraph of Section 8 of the Act of 1931 is as follows:

"Any person who discovers an unsurveyed area of school land which has not been listed on the records of the Land Office as school land, and is not in actual conflict on the ground with land previously sold or appropriated and which appears on the official Land Office map as unsurveyed land, may apply in writing to the county surveyor and have the same surveyed, and after the field notes thereof have been returned to the Land Office and approved and filed with the Land Commissioner, shall have a preference right for sixty (60) days thereafter to purchase a mineral lease thereon at the minimum price fixed by the Land Commissioner, in addition to the other consideration provided herein."

■ Taken literally, the words "and which appears on the official Land Office map as unsurveyed land" seem to mean that the Commissioner of the General Land Office is authorized by Section 8 to lease for minerals only those areas which are so delineated or so marked on the official Land Office maps that they are exhibited thereon and thereby as unsurveyed land. The phrase is not to be construed, however, apart from its context or without consideration of the other provisions of the Act. Wintermann v. McDonald, 129 Texas 275, 102 S. W. (2d) 167, 104 S. W. (2d) 4; Caples v. Cole, 129 Texas 370, 102 S. W. (2d) 173, 104 S. W. (2d) 3; Humble Oil & Refining Company v. State, 104 S. W. (2d) 174, (application for writ of error refused). Looking first to the provisions

of the Act in general, we find that the caption, in so far as it relates to public school land, in substance describes the Act as intended to regulate the sale and lease of public school lands, to provide for the disposition and sale of minerals contained in all unsold public school land, both surveyed and unsurveyed, to prescribe preferences and forfeitures, to define surveyed and unsurveyed land, and to provide generally the method and means for the sale, leasing and development of the public school lands. Section 1 broadly provides that *all lands* set apart to the public free school fund and *all* of the unappropriated and unsold public domain, except river beds, lakes, etc., *"are subject to control and sale under the provisions of this Act."* Section 2 prescribes the method of selling surveyed public school land. By Section 3 surveyed and unsurveyed lands are thus defined:

"Surveyed lands within the terms of this Act is defined to be all tracts or parts of tracts heretofore surveyed either on the ground or by protraction, and set apart for the public school funds and which is unsold, and for which field notes are on file in the General Land Office or which may be delineated on the maps of said office as such, and unsurveyed land is defined to be all areas not included in surveys on file in the General Land Office or surveys delineated on the maps thereof."

Section 4, which was construed in Wintermann v. McDonald, supra, relates to the reservation by the State of a free royalty of all minerals in all sales made by the State. Certain preference rights to purchase are given by Section 5. The sale of unsurveyed land is regulated by Section 6. The method of sale provided for unsurveyed land is in substance as follows: Persons desiring to buy file with the county surveyor an application for survey, describing the land in such manner as will enable the surveyor to identify it. The surveyor is required to notify each claimant or adjoining owner, giving a description of the land and the date when the survey will be made. After the survey has been made the field notes are filed with the General Land Office within 120 days from the filing of the application with the surveyor. It is made the duty of the Commissioner, if the area is found by him to be unsurveyed and subject to sale, to value the land and give notice to the applicant, who may purchase it on the same terms and conditions as prescribed for the sale of surveyed land. However, a preference right to purchase the land is given, for a period of sixty days after service of notice, to any person who

has the land enclosed, claiming it in good faith, or who occupies it as a home. The sale of land, both surveyed and unsurveyed, situated within five miles of a producing oil or gas well is prohibited by Sections 2 and 6. See Caples v. Cole, 129 Texas 370, 376, 102 S. W. (2d) 173, 104 S. W. (2d) 3; Humble Oil & Refining Company v. State, 104 S. W. (2d) 174 (application for writ of error refused). Section 7 relates to interest on sales of school land. The contents of Section 8, which is the section of the Act particularly to be construed, has already been stated. Provision is made by Section 9 for advertising areas subject to lease, and by Section 10 the terms of lease are specified. Section 11 prescribes the method of making and crediting payments for land, for leases and for royalties. Section 12 regulates the leasing of land for gold and other metallic ores. Articles 5323, 5338 and 5374 of the Revised Civil Statutes of 1925 and all other laws in conflict with the Act are repealed by Section 13.

██ Thus it is apparent that the Act is a comprehensive statute, authorizing the sale and the leasing for minerals of all unsold public school land, both surveyed and unsurveyed, and prescribing the terms and conditions of sales and leases. It is a statute complete in itself, except that by reference it incorporates some of the provisions of the Revised Civil Statutes. The leasing of public school land for mineral production is a sale within the meaning of Section 4 of Article 7 of the Texas Constitution. Greene v. Robison, 117 Texas 516, 535, 8 S. W. (2d) 655; Theisen v. Robison, 117 Texas 489, 8 S. W. (2d) 646; Ehlinger v. Clark, 117 Texas 547, 8 S. W. (2d) 666. This section of the Constitution has been construed as requiring the sale of school land and prohibiting the withholding of it from sale for an unreasonable length of time. Smisson v. State, 71 Texas 222, 9 S. W. 112; Reed v. Rogan, 94 Texas 177, 59 S. W. 255; Ketner v. Rogan, 95 Texas 559, 68 S. W. 774; Pruett v. Robison, 108 Texas 283, 285, 192 S. W. 537. Unless Section 8 of the Act of 1931 is construed as authorizing the Commissioner to execute mineral leases of land which is not visibly shown as unsurveyed land on the official Land Office maps, after making from the field notes caused to be prepared and filed by the applicant and from other records of his office, the primary determination that the area is unsold, unsurveyed land, no effective provision is made by the Act or elsewhere in the statutes for the sale of unsurveyed land within five miles of a producing oil or gas well; and the Act is not, as its caption and first section indicate that it is intended to be, and as it should be in order to comply with the mandate

of the Constitution, one providing for the sale of all public school land. This is true because, as is generally known, there is very little unsold, unsurveyed public school land visibly shown as such on the official maps of the Land Office, and further because the statute prohibits the selling, as distinguished from leasing, of any land within five miles of a producing oil or gas well and provides no method and no means of the Commissioner for the discovery and surveying of unsurveyed land. No way is provided for leasing such land for minerals, unless it is discovered and caused to be surveyed by one desiring to lease it under the preference right given by Section 8. Chief Justice McClendon correctly construed Section 8 when he said in the opinion in Stanolind Oil & Gas Company v. State (114 S. W. (2d) 706):

"The discovery alluded to in the 1931 act we think clearly means the discovery by 'any person' to the land commissioner, by means of an application to lease under the 1931 act. * * * The underlying policy of the 1931 act was to encourage private individuals, at their own expense, to bring into the school fund mineral lands properly belonging to the fund which had not theretofore been listed as such. The benefits of the statute enured to the one who discovered that the land was not so listed, and made application in compliance with the statute. This is, we think, the only practical construction of the statute which would effectuate its purpose. Any other construction would lead to interminable confusion."

It is doubtless true that a wiser method might have been adopted to bring such mineral lands into the school fund, but the Court of Civil Appeals in that case, as we are here, was concerned with what had been done rather than with what it might think ought to have been done.

Considering more particularly the language of the second paragraph of Section 8 above quoted, we find that if the words "which appears on the official Land Office map as unsurveyed land" are given their literal meaning, the paragraph, all of which is in a single sentence, is in itself contradictory. Authority is given to the Commissioner to lease the area to one who discovers it, "if it has not been listed on the records of the Land Office as school land" and if it "appears on the official Land Office map as unsurveyed land." The first condition is reasonable and its meaning and purpose are plain, for one should not be rewarded for "discovering" land already listed on the Land Office records. The listing of land on the

records of the Land Office follows and could not precede its discovery. One of the proper places for making record of school land belonging to the State is on the official maps. And yet, if effect is given only to the very words of the paragraph, one may be a discoverer of an area of unsurveyed land which appears on the official Land Office map as such but he may not be a discoverer of an area of unsurveyed land which is listed on some other record of the office. There can be do discovery of an unsurveyed area of school land which at the time it is "discovered" is shown and designated on the official Land Office map as unsurveyed school land. It has already been discovered. The discovery on account of which the preference right is given is certainly something more than the mere finding of what is apparent on the official Land Office map. It is a discovery accomplished by ascertaining that there is an unsurveyed area of public school land and by bringing it to the attention of the Commissioner in the taking of the several steps prescribed by the statute, that is, filing application with the surveyor, causing the survey to be made and field notes, disclosing the location and defining the bounds of the area, to be prepared and filed in the General Land Office.

■ Since the Act of 1931 went into effect until the time of the institution of this suit the Act, particularly Section 8, has been construed by the former Land Commissioner and by the defendant Land Commissioner as authorizing the Commissioner to execute mineral leases to applicants under Section 8, upon areas that are not visibly shown or designated as unsurveyed land on the official Land Office map of the county in which the land is situated, and many mineral leases have been issued on such construction during the period of more than six years and are now outstanding. Judicial notice may be taken of such uniform and continued practice of the head of an executive department of the State government in construing and administering a law which it is his duty to execute. Fielder v. Houston Oil Company of Texas (Com. App.) 208 S. W. 158, 160; Tate v. Standard Accident Insurance Company, 32 S. W. (2d) 932, 934 (application for writ of error refused); Cathey & Carrell v. Terrell, 121 Texas 130, 132, 45 S. W. (2d) 956; Cosmos Exploration Company v. Gray Eagle Oil Company, 190 U. S. 301, 24 Sup. Ct. 860, 47 L. Ed. 1064, 1071; 23 Corpus Juris, pp. 100-101, Section 1899; 15 R. C. L. p. 1110, Sec. 40; Jones' Commentaries on Evidence, Vol. 1, Sec. 122, pp. 584-585.

■ The county maps prepared and used in the General Land

Office constitutes only a part of the records of that office which show the various surveys in the county, their location and their connections the one to the other. File numbers and other notations on the maps give reference to field notes, surveyors' reports, sketches and other records descriptive and explanatory of the surveys delineated on the maps, and in the light of which the maps must be examined if they are to be thoroughly understood. It is impossible, on account of the comparatively small scale used in drawing the maps, to enter on them all information that will accurately disclose the true boundaries of all of the surveys and their exact locations in relation to other surveys. The Commissioners of the General Land Office gave a reasonable and practical construction to the phrase "which appears on the official Land Office map as unsurveyed land" when in their administration of the law they treated it as meaning land appearing to be unsurveyed land on the official map read and interpreted in connection with the field notes filed and other records in the Land Office.

It is our opinion that, in order to give effect to the intention of the Legislature as disclosed by the entire Act and to avoid contradiction in a literal interpretation of language used in Section 8, which would defeat the declared purpose to provide for and regulate the sale of *all* public school land and disposition and sale of minerals in *all* unsold public school land, surveyed and unsurveyed, Section 8 of the Act is properly construed as authorizing the Commissioner of the General Land Office to execute mineral leases upon applications filed under that section of the Act, when, after examination of the field notes filed, the official maps and other records of the General Land Office, he has determined that the area applied for and described in the field notes is not listed on the records of the Land Office as school land and is unsold, unsurveyed land as defined in Section 3 of the Act, that the field notes are correct and that the applicant has discovered the area and taken the several steps and made the payment as prescribed by the Act.

■ Plaintiffs make the contention that the Commissioner of the General Land Office is wholly without authority to execute mineral leases to defendants Short, Gholson and Sullivan, because plaintiffs are now and were when the applications were filed in possession of the land applied for, claiming it as a part of the Morales league. This contention is based upon Articles 5420 of the Revised Civil Statutes of 1925, which is as follows:

"When any public lands are held, occupied or claimed by any person, association or corporation adversely to the State, or to any fund, or when lands are forfeited to the State for any cause, the Attorney General shall institute suit therefor, together for rent thereon, and for any damages thereto. For the purposes of this and the preceding article, venue is fixed in Travis County, concurrently with the county of defendant's residence and the county where the land lies."

The proposition submitted is that, when the area applied for is adversely claimed or possessed, this article of the statutes, in effect or by implication, prohibits the Commissioner from determining that the area is unsurveyed school land and from executing a mineral lease on it until there has been an adjudication of the State's ownership of the land in a suit filed by the Attorney General for its recovery.

This article merely declares it to be the duty of the Attorney General to institute suit for the recovery of any public land held, occupied or claimed adversely to the State and fixes the venue of such suit. It makes no reference to the Commissioner of the General Land Office and does not purport to regulate sales of public school land made by him or to prohibit him from selling them or to restrict his authority to do so. The Act of 1931, as has been said, provides for and regulates the sale and leasing of all public school land, surveyed and unsurveyed, and is complete in itself except that it incorporates by reference certain of the articles of the Revised Civil Statutes. Neither the Act of 1931 nor any article of the Revised Civil Statutes to which it refers contains any reference to Article 5420. The first section of the Act of 1931 declares that all public lands "are subject to control and sale under the provisions of this Act." Section 8 confers upon the Commissioner the authority to lease unsurveyed areas for minerals and with subsequent sections of the Act prescribes the method of making leases and the consideration and terms upon which they are to be made. Nowhere does the Act either by express language or by fair inference so limit the broad authority conferred upon the Commissioner as to prohibit him from selling or leasing school land belonging to the State which may be adversely possessed. To construe Article 5420 as having the effect of imposing such limitation upon the authority given the Commissioner by the Act of 1931 would be in effect to amend that Act by writing into it an inference taken from an article of the statutes which is not made a part of the Act and which bears no direct relation to it.

The history of Article 5420 does not justify the construction or application that plaintiffs would give it. It originated as Section 8 of the Act approved February 23, 1900 (Acts First Called Session, 26th Legislature, Chapter 11, p. 29), which settled the account between the State and the permanent school fund, authorized the Commissioner to cause the larger areas of unsurveyed land to be surveyed into sections and to sell them as surveyed land, prescribed the method and terms of selling smaller areas of unsurveyed land, · and gave certain preference rights in the sale of such lands. Section 8 immediately followed the sections which made provision for the sale of unsurveyed lands and the giving of preferences. In language similar to that used in Article 5420, Section 8 provided that "when any of the lands described in this act, or any of the other public lands of the State, * * * are held, occupied or claimed by any person, * * * it shall be the duty of the Attorney General to institute suit therefor."

Juencke v. Terrell, 98 Texas 237, 82 S. W. 1025, has been cited by the defendants as holding that Section 8 of the Act of 1900 had the effect of depriving the Commissioner of the General Land Office of authority to sell unsurveyed land belonging to the State, when possessed and claimed adversely to the State, until after determination of the State's ownership and right of possession in a suit filed by the Attorney General. A different question was presented and decided in that case. It was an original proceeding in the Supreme Court for mandamus. The land involved and applied for by the relator was not alleged or believed to be land lying outside of surveys on file in the Land Office. It lay within the bounds of a grant made by the State of Coahuila and Texas alleged to be invalid. The decision was that "where there is a dispute as between the State and another party *as to the title* to a tract of land," the Commissioner cannot be compelled by mandamus to make a sale. (Our italics). The court in making its decision expressed the opinion that both Article 14, Section 2, of the Constitution, which prohibits the location of land certificates upon land titled or equitably owned under color of title, and Section 8 of the Act of 1900 evinced "the policy of the state not to encourage litigation by permitting the acquisition from the state of school lands which appear upon the official records or by actual occupancy to be claimed adversely to it." In the same connection Chief Justice Gaines stated in the opinion that Section 2 of Article 14 of the Constitution does not prohibit the legislature from providing for

the sale of such lands. It seems, therefore, that the opinion in that case treats Section 8 of the Act of 1900, in so far as it may have a bearing upon sales, as a declaration of policy and not as a prohibition of sales.

Southern Pine Lumber Company v. Consolidated Louisiana Lumber Company (U. S. C. C. A.) 217 Fed. 719, also involved land admittedly included within the bounds of a grant.

The decision in Cockrell v. Work, 122 Texas 406, 61 S. W. (2d) 787, was that an adverse judgment rendered in a suit filed in 1904 against one who, as an applicant to purchase unsurveyed land, sued the county surveyor, joining the adverse claimants, to compel a survey of land alleged to be vacant, was not res adjudicata against the State in a later suit filed by another applicant for the same land under the provisions of Article 5323 of the Revised Civil Statutes of 1925 (the Act of 1919). The gist of the opinion written by Judge Short is that when the first suit was instituted there was no law authorizing the applicant to file suit to establish the State's ownership of the land. The opinion contains the expression of the conclusion that by reason of Section 8 of the Act of 1900 the Commissioner was without authority to invest the applicant under that Act with any right to the land when it was adversely claimed by third parties under grants from the sovereign. This conclusion expressed in Judge Short's opinion as to the effect of Section 8 of the Act of 1900 is contrary to the decision of the very same question made by the Court of Civil Appeals in Blaffer v. State, 31 S. W. (2d) 172, 190, in which application for writ of error was refused. It was there held that an area of unsurveyed land was subject to sale to one filing an application to purchase it under the Act of 1900, notwithstanding the fact that the land was adversely possessed and claimed.

The statement in the opinion in the Cockrell-Work case, to the effect that Section 8 of the Act of 1900 deprived the Commissioner of authority to sell unsurveyed land adversely possessed, was made in a discussion of that section as originally enacted. If it be granted that Section 8 when first enacted as a part of the Act of 1900 is correctly construed as imposing that limitation upon the Commissioner's authority, it is apparent from changes thereafter made in the law regulating the sale of unsurveyed land and brought into the Revised Civil Statutes of 1911 and 1925, that Section 8 as made a part of these revisions, has a more restricted meaning and is not intended to prohibit the selling of unsurveyed land

when claimed or possessed adversely to the State. Section 8 of the Act of 1900 became Article 5468, a part of Chapter 10 of Title 79, of the Revised Civil Statutes of 1911. That part of the Act of 1900 authorizing and regulating the sale of unsurveyed school land had been rewritten as Section 8 of the Act approved April 15, 1905 (Chapter 103, p. 159, Acts Regular Section, 29th Legislature), and Section 8 of the Act of 1905 (with amendments made in 1907, unimportant here) was incorporated in the Code of 1911 as Article 5432, a part of Chapter 9 of Title 79. This article contained the following paragraph taken from Section 8 of the Act of 1905, which indicated an intention that the Commissioner should sell unsurveyed land even though it was adversely claimed:

"When any land, lying between older surveys, is held by the Commissioner of the general land office to be unsurveyed or vacant land appropriated to the public school fund by the act of February 23, 1900, and is sold as such under the provisions of this chapter, and thereafter any suit arises between the owner or owners of such older surveys, and the purchaser from the state or his vendees, any final judgment rendered in such suit shall be deemed and held conclusive as to the existence or non-existence of such vacancy; provided, if in any suit judgment is obtained through collusion or fraud against the state, the same may be set aside and vacated at the suit of the state any time within five years thereafter."

Article 5432 of the Code of 1911 was rewritten by the Act approved April 3, 1919 (Acts Regular Session, 36th Legislature, Chapter 163, p. 312) and as rewritten it expressly gave the Commissioner discretion, when it appeared that another than the applicant claimed an unsurveyed area belonging to the school fund, either to refer the claim to the Attorney General for the institution of suit before making sale or to sell the land without referring the claim to the Attorney General. Article 5432 as rewritten in 1919 became Article 5323 of the Revised Civil Statutes of 1925, a part of the second section of Chapter 3, Title 86. Section 8 of the Act of 1900, somewhat changed in form, appears in the Code of 1925 as Article 5420, a part of Chapter 7 of Title 86. It has hereinbefore been quoted.

This section 8, as brought into the two codes in other chapters than those authorizing and regulating the sale of school land and containing no reference to such chapters or to any articles in them or to the authority of the Commissioner, cannot reasonably be construed to impose limitations

upon the Commissioner's authority to make sales or to prohibit him from selling unsurveyed land adversely claimed, when the very articles of the codes that confer upon him the authority to make sales of such land, the one by implication and the other in express terms, authorize him to sell the land even though it is adversely claimed.

Neither the repeal of Article 5323 (Act of 1919) by the Act of 1931 nor the mere omission from the Act of express provision for authority to sell land adversely claimed would change the intention of the legislature in the enactment of Article 5420 as a part of the code adopted in 1925. It has now the meaning that it had when the code went into effect.

We therefore hold that Section 8 of the Act of 1931 confers upon the Commissioner of the General Land Office lawful authority to determine, as a basis for his action in executing or in declining to execute mineral leases upon the applications filed by defendants Short, Gholson and Sullivan, the question whether the area or areas applied for and described in the field notes are unsurveyed land as defined in the Act. Since lawful authority to make such primary determination is conferred upon him, the courts cannot, when the question is still properly before him, take jurisdiction and proceed to decide the question. The primary purpose of this suit is to restrain the Land Commissioner in the performance of the duty and the exercising of the authority imposed and conferred upon him by statute for the purpose of making disposition of the State's school land. The order of District Court granting the injunction, from which the appeal was taken, contains a finding that the lands described in the petition are not vacant, unappropriated school lands but are included within a survey of titled land, thus deciding the very question that the Land Commissioner, an executive or administrative officer, is authorized by statute first to determine.

In Kaufman County v. McGaughey, 3 Texas Civ. App., 655, 21 S. W. 261 (application for writ of error refused) Justice Key said: "There is a vast difference between coercing or restraining an officer in a matter within the scope of his authority, and exercising similar control over him in a matter clearly outside or beyond his authority." He quoted from High on Injunctions the rule that "equity will not interfere while public officers are acting within the authority conferred upon them by law, to determine whether their action is good or bad."

■ A suit of this character, to enjoin the Land Commissioner, when acting within the scope of his authority, from making

an award or executing a lease, is a suit to control the action of the State in selling its public lands and is therefore in effect a suit against the State, which cannot be maintained, the State not having consented to be sued. Cosmos Exploration Co. v. Gray Eagle Oil Co., 190 U. S. 301, 24 Sup. Ct. 860, 47 L. Ed. 1064; Worcester County Trust Co. v. Riley, 302 U. S. 292, 58 Sup. Ct., 185, 82 L. Ed. 268, 273-274; Louisiana v. Garfield, 211 U. S. 70, 29 Sup. Ct., 31, 53 L. Ed. 92; New Mexico v. Lane, 243 U. S. 52, 37 Sup. Ct., 348, 61 L. Ed. 588; State of Texas v. Ferguson, State of Texas v. Kirby, 133 Texas 60, 125 S. W. (2d) 272, 6 TCSR 336; Herring v. Houston National Exchange Bank, 113 Texas 264, 253 S. W. 813; McKamey v. Aiken, 118 S. W. (2d) 482; 25 R. C. L. p. 413, Sec. 50.

The instant suit, after disposition of the contentions as to the construction of Section 8 of the Act of 1931 and the effect of Article 5420, is substantially the same as McKamey v. Aiken, supra, in which McKamey sued the Commissioner of the General Land Office and Aiken, who had filed in the Land Office applications for a mineral lease. The suit, which was designated a suit to remove cloud from title, was filed before the Commissioner acted upon the applications, the allegations being that Aiken, in filing the applications, and the Commissioner, in entertaining them, were acting wrongfully because the land belonged to McKamey. The judgment of the Court of Civil Appeals, affirming the action of the trial court in dismissing the suit, as being a suit against the State, was approved by this court in dismissing the application for writ of error. We approve the reasons for the decision as thus stated by Judge Slatton, who wrote the opinion of the Court of Civil Appeals:

"It is thus seen that upon an application being filed to buy or lease school land the Land Commissioner is given authority to determine whether the land covered by the application is vacant and belongs to the State. To control the discretionary action of the Land Commissioner through the processes of the courts in this regard is to control the State itself. This cannot be done absent legislative authority. It is therefore believed that this action is in reality one against the State, since its primary purpose is to preclude the Land Commissioner of the State of Texas, in his official capacity, from performing his discretionary duties enjoined upon him by law; that is, to determine the ownership of the land covered by the application. If the Land Commissioner determines the land to belong to the Public

Free School System and grants the application to purchase of appellee, Aiken, appellant may have his day in court in the assertion of his title against the grantees of the State."

■ If the Commissioner of the General Land Office should approve the field notes filed by defendant Short, Gholson and Sullivan and execute and deliver a lease to them, a prima facie presumption would arise that the land is unsurveyed land belonging to the State. This because of "the familiar principle that the law presumes that a public official has rightly performed his duty." Anderson v. Polk, 117 Texas 73, 297 S. W. 219; Corrigan v. Fitzsimmons, 97 Texas 595, 80 S. W. 989; Smithers v. Lowrance, 100 Texas 77, 93 S. W. 1064; Gulf Production Co. v. State, 231 S. W. 124 (application for writ of error refused); Weatherly v. Jackson, 123 Texas 213, 71 S. W. (2d) 259. This presumption is merely prima facie and may be rebutted by proof. And it may be observed that practically, in the disposition of suits involving the question whether there is vacant unsurveyed land lying between surveys, this presumption has little effect, when the facts are fully developed, for the reason that such suits usually are decided as presenting questions of law. We do not mean to intimate that the present Commissioner of the General Land Office will approve the applications. There is neither pleading nor proof as to his intention. And, of course, we express no opinion on the question whether the land applied for is vacant unsurveyed land.

■ The position taken by the plaintiffs, that they would be wholly without remedy to protect themselves against the lessees if the Commissioner of the General Land Office should execute a lease to defendants Short, Gholson and Sullivan, is untenable. A suit between the plaintiffs and such lessees would be a controversy as to title and right of possession between two conflicting claimants which could be settled as between them without the presence of the State as a party. Suits of that kind have often been maintained. One example is a suit by the locator of a certificate upon land believed to be unappropriated brought against the surveyor to compel the making of a survey and against another claiming the land under title from the State. To use Judge Stayton's language in Thomson v. Locke, 66 Texas 383, 389, 390, 1 S. W. 112, the plaintiff in such suit "does not claim to have the legal title to the land but seeks to establish the superiority of the right held by him to that held by any other person" and the result of the action "is binding upon the plaintiff and the adverse

claimant on the question of title." Similarly, the conflicting claims of two purchasers or lessees of public school land from the State have many times been settled in suits filed in district court to which the State was not a party. Fristoe v. Blum, 92 Texas 76, 45 S. W. 998; Anderson v. Neighbors, 94 Texas 236, 59 S. W. 543; Nations v. Miller, 107 Texas 616, 183 S. W. 153. The opinion of Justice Critz in Camp v. Gulf Production, 122 Texas 383, 397, 399, 61 S. W. (2d) 773, although written in a suit brought by express statutory authority, announces the general rule that one who has complied with all the requirements of the statutes prescribing the method of purchasing school land is entitled to litigate his rights with adverse claimants although he has not received the evidence of his title. In Caples v. Cole, 129 Texas 370, 377, 102 S. W. (2d) 173, 104 S. W. (2d) 3, the land in controversy had been sold by the State and patented to Cole under the Act of 1931. Thereafter Caples filed under the same Act his application to purchase and in the alternative to lease the land for oil and gas, which was rejected by the Commissioner of the General Land Office. The case was tried on Caples' cross action against Cole, the State not being a party to the suit. The court affirmed the trial court's judgment in favor of Cole, because Caples' suit was not brought within one year after the date of the sale to Cole, applying Section 4 of Article 5329, Revised Civil Statutes of 1925, which provides that "no sale made without condition of settlement shall be questioned by the State or any person after one year from the date of such sale." Associate Justice Sharp, discussing in the opinion the right of Caples to maintain the suit against Cole, said:

"This gave him an interest in the land in controversy under the terms of this law, and he or the Attorney General had the authority to question the validity of the patent issued to Cole in a court of competent jurisdiction, if suit be filed within the time required by law."

If one to whom the Commissioner of the General Land Office has sold or leased land, or one who has met all the requirements of the statute prescribing the method of purchasing or leasing land, may without making the State a party, maintained suit to establish the superiority of his right over that of one claiming the land under another or prior title from the State, then undoubtedly such other or prior claimant may defend his title and right of possession or may himself institute suit against the subsequent purchaser, lessee or claimant to establish the superiority of his right. The judgment ren-

dered in the suit between the adverse claimants does not cancel the patent, lease or other evidence of right under which the losing party claims. It determines the superiority of the winner's patent, lease or other evidence of title. When the issue is whether a vacancy exists between surveys, the judgment fixing the boundaries of the surveys has the effect of determining as between the parties the physical extent of the rights asserted. In the absence of a statute like Article 5323 making the State in effect a party the State, not being a party, is not bound by the judgment, that is to say, the judgment is not res adjudicata against the State. Prairie Oil & Gas Company v. State (Com. App.) 231 S. W. 1088, Id. 214 S. W. 363; Cockrell v. Work, 122 Texas 406, 61 S. W. (2d) 787.

The doctrine of *stare decisis* may in later litigation to which the State is a party cause it to be affected by the decision of questions of law made in the prior suit between the individual claimants. The effect is, however, only indirect. It does not result from the operation of the former judgment but from the principle which induces courts to follow their own decisions. Benavides v. Garcia, (Com. App.) 290 S. W. 739; Porter v. State, 15 S. W. (2d) 191; 11 Texas Jurisprudence, pp. 838-840, Section 96.

Colquitt v. Gulf Production Company (Com. App.) 52 S. W. (2d) 235, and York v. Alley, 25 S. W. (2d) 193 (application for writ of error refused) are not in conflict with the conclusion that the State is not an indispensable party in a suit for settlement of the conflicting rights claimed by a purchaser or lessee of public school land and those asserted by one holding under another title from the State. The Colquitt case was a suit for a cancellation of an oil and gas lease made under the provisions of Articles 5367-5382 of the Revised Civil Statutes of 1925, the Relinquishment Act. It was held that "being in law the only lessor of the mineral estate and all its incidents, the State is the only one who could maintain an action to avoid the transaction." The area involved in York v. Alley adjoined Univerity land owned by the State and the area was claimed by the State as a part of the University land. The suit was brought under Article 5323, which expressly required that all claimants of the land be made parties. The dismissal of application for writ of error in De Grazier v. Panell, 109 S. W. (2d) 1109, approved the judgment rendered by the Court of Civil Appeals, which on three distinct grounds affirmed the trial court's action in sustaining a general de-

murrer to plaintiff's petition, and is not to be taken as an approval of the ruling that the State was a necessary party.

■ The plaintiff's suit in the instant case against the defendants other than the Commissioner of the General Land Office is not a suit against a purchaser or lessee from the State, or against one whose application has been rejected by the Commissioner after he has taken the necessary steps to become a purchases or lessee. It is a suit to prevent defendants from becoming lessees by enjoining them from further prosecution of their application. It cannot be maintained for the same reason that the suit against the Commissioner cannot be maintained, that is, because it undertakes to obtain in court the decision of a question that the law intends shall be first determined by the Commissioner of the General Land Office and seeks by injunction, procured in the absence of the State as a party, to control the State in the disposition of its public land. That control would be as effectively accomplished by the successful prosecution of this suit against the defendants, who are applicants for leases, and of like suits against others who might apply for leases on the same land, as it would be by injunction against the Commissioner.

The plea to the jurisdiction filed by the Commissioner of the General Land Office and the plea filed by defendants Short, Gholson and Sullivan for the abatement of the suit as being in effect a suit against the State, both of which were presented before the hearing of the application for temporary injunction, should have been sustained. It is unnecessary to pass upon other questions presented by the briefs.

The judgment of the Court of Civil Appeals is reversed. The order of the district court granting the application for the issuance of temporary injunction is set aside and the temporary injunction is dissolved.

Opinion adopted by the Supreme Court April 5, 1939.

Rehearing overruled May 24, 1939.